## CLEMENT v. WILSON.

(Circuit Court of Appeals, Eighth Circuit. February 8, 1926.)

No. 6910.

1. Mines and minerals ⬥⇒74—Evidence warranted jury in finding that plaintiff made false representations to defendant in inducing contract to pay for assignment of options.

In action by plaintiff for balance due on contract for assignment of extended options, evidence *held* to warrant jury in finding that contract for assignment of extended oil and gas options was induced by false representations of plaintiff assignor as to amount of his expenditures in securing extension of options.

2. Equity ⬥⇒381—Chancellor was warranted in accepting advisory verdict of jury as to plaintiff's false representations in inducing contract for assignment of options.

In action by plaintiff for balance due on contract for assignment of extended options, where defendant interposed equitable defense asking for cancellation of contract, and counterclaimed for money paid, on the ground that contract was induced by false representations, *held* chancellor was warranted in accepting advisory verdict of jury, finding plaintiff had made such false representations.

3. Appeal and error ⬥⇒1033(7).

Inconsistency of decree, in that the verdict was not followed to its logical conclusion by the rendition of judgment against plaintiff, cannot be complained of by plaintiff appellant.

Appeal from the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Suit by Clement A. Clement against Edward R. Wilson, wherein defendant filed a cross-petition. From a decree for defendant, but denying relief on defendant's cross-petition, plaintiff appeals. Decree affirmed.

W. D. Tatlow, of Springfield, Mo., for appellant.

Clarence Mills, of Oklahoma City, Okl. (John H. Shirk and Harris L. Danner, both of Oklahoma City, Okl., on the brief), for appellee.

Before KENYON and VAN VALKENBURGH, Circuit Judges, and YOUMANS, District Judge.

YOUMANS, District Judge. Appellant, hereafter called plaintiff, brought this suit against appellee, hereafter called defendant, in the United States District Court for the Western District of Oklahoma to recover $4,500 upon a written contract signed by plaintiff and defendant on June 2, 1922. That contract, omitting signatures, reads as follows:

"This contract made and executed between Clement A. Clement, of the city of Houston, county of Harris, state of Texas, U. S. A., first party, and Edward R. Wilson, resident of the city of Oklahoma City, county of Oklahoma, state of Oklahoma, U. S. A., second party, witnesseth:

"That whereas, the said Clement A. Clement is the owner of three (3) certain options to lands for oil and gas purposes, covering certain lands and properties in the republic of Colombia, South America, which said three (3) several properties are evidenced by certain instruments designated, respectively, as, viz.:

"(1) Escritura No. 1166, dated at Bogota in the republic of Colombia, at the office of the third notary, August 11, 1921;

"(2) Escritura No. 1227, dated at Bogota in the republic of Colombia, at the office of the third notary, August 23, 1921;

"(3) A transfer of escritura No. 281, lands of Santa Rita and Opon, dated April 19, 1920, at Chia, before the notary of the Circuit Chia (Obdulio E. Cuandres), executed by Horacio and Fabio Hernandez and Eduardo Lopez Pumerejo, which option contract is in the form of a letter dated August 27, 1921, to Clement A. Clement, and attached to said letter is a copy of the said escritura No. 281, above referred to;

"And, whereas, the said Clement A. Clement, by this instrument, contracts and agrees that he can secure renewals of said options and contracts for the period to and including July 1, 1923, for the sum of ten thousand ($10,000.00) dollars, and that he will secure the said extensions, and when they are secured said Edward R. Wilson will pay to said Clement A. Clement the sum of ten thousand ($10,000.00) dollars;

"It being understood and agreed that the said Clement A. Clement, simultaneously with the payment of the said sum, shall execute to the said Edward R. Wilson assignments of said properties and extensions in such form as is required by the laws of the Republic of Colombia, South America, to convey the same to Edward R. Wilson.

"It is further agreed and understood that the said Edward R. Wilson shall have the power and authority and the same is hereby granted him to sell, contract for the sale of, to assign and convey, and contract for the assignment and conveyance of, either, all, or any of the above-described properties, or properties contemplated by this contract, or any part of any of said tracts or properties.

"It is further agreed and understood, that out of the first proceeds realized by the said Edward R. Wilson from any disposition of any of said properties, or parts thereof, one-half ($\frac{1}{2}$) thereof, that is one-half ($\frac{1}{2}$) of said proceeds shall be paid to each of the parties hereto, Clement A. Clement and Edward R. Wilson, up to the sum of ten thousand ($10,000.00) dollars to each; it being the purpose hereof that there shall be repaid to said parties out of the first proceeds the moneys which they have advanced, namely ten thousand ($10,000.00) dollars by Clement A. Clement and ten thousand ($10,000.00) by Edward R. Wilson.

"It is further agreed and understood, that it may be necessary to pay a cash consideration or make other settlement by way of interests in all or part of said properties to and with other parties who have heretofore been employed or who may hereafter be employed in the handling, financing, and disposition of said properties, and, in such cases, the said Edward R. Wilson shall make such cash payment or payments out of the proceeds from the disposition of any of said properties, after the repayment of the same above-mentioned to Clement A. Clement and Edward R. Wilson, or shall make such conveyance, or conveyances, of interests in or parts of said properties as may be required to be made with such parties on the basis of an interest in or parts of said properties; and whatever remains in the way and form of cash and/or parts of or interests in said properties above described and properties contemplated by this contract shall be and belong one-half ($\frac{1}{2}$) to Clement A. Clement and one-half ($\frac{1}{2}$) to Edward R. Wilson, and the said Edward R. Wilson shall be construed to hold the said one-half ($\frac{1}{2}$) interest in said cash or properties for said Clement A. Clement, and shall account to said Clement A. Clement therefor.

"It is further agreed and understood that, in addition to the properties specifically described above, in paragraphs one (1), two

(2), and three (3), all properties, property rights, or oil and gas leasehold interests, in the republic of Colombia, South America, now owned or being negotiated for by said Clement A. Clement, or that may hereafter be acquired by him, shall be regarded as coming within the terms of this agreement, and shall be transferred and conveyed to Edward R. Wilson upon request for the purpose of holding, handling, financing, and disposition, in the same manner as the properties hereinabove specifically described. This provision also applies to any properties, property rights, or oil and gas leasehold interests that may be acquired in said republic of Colombia, South America, by Edward R. Wilson from any source whatsoever.

"In witness whereof the parties have hereunto set their hands this 2d day of June, A. D. 1922."

The complaint of plaintiff contains the following allegations:

"That, after the execution of said contract and as provided for therein, this plaintiff did, at considerable expense and trouble to himself, procure the extensions of said options and contracts for the period to and including July 1, 1923, and cause the same to be deposited in the Security National Bank in Oklahoma City, Okl., and on or about the 18th day of September, 1922, deposited therewith an assignment of said option and contracts to the said defendant, Edward R. Wilson, which said assignment so deposited with said options and contracts contained the following provision:

" 'This assignment and the said papers are to be delivered by the said bank to the said Edward R. Wilson only upon payment of the sum of five thousand dollars ($5,000.00) to the said bank for the account of the said Clement A. Clement, and upon the further condition that the said Edward R. Wilson by the acceptance of this assignment does hereby bind and obligate himself to pay the said bank for the account of the said Clement A. Clement the further sum of five thousand dollars ($5,000.00) within ten days from the date of such delivery, said bank not to be responsible to the said Clement for the said last five thousand dollars ($5,000.00) until the same is paid to them by the said Edward R. Wilson.'

"That the said Edward R. Wilson did thereafter pay to said bank the first $5,000 therein mentioned and accepted the assignment and received the contracts and options referred to therein from said bank, but wholly failed and neglected to pay either to the said bank or the plaintiff herein, within 10 days from the delivery of said assignment and said options and contracts to him, the second $5,000, as he agreed to do by the said contract, and afterwards by the acceptance of said assignment; but afterwards, to wit, on November 11, 1922, paid the plaintiff the sum of $500 on the said contract. That the said plaintiff has repeatedly demanded of the said Wilson that he pay to him the balance due him under said contract, to wit, the sum of $4,500, but that the said defendant has refused to pay the same, and still refuses to pay the same, and that said amount and interest thereon is still due the plaintiff.

"III. Plaintiff further states that he has duly performed all the conditions on his part of the said contract between the said plaintiff and the defendant, and that there is now justly due the said plaintiff on the said contract the sum of $4,500 with interest thereon at 6 per cent. per annum from October 1, 1922, until paid."

Defendant filed answer and cross-petition; the material portions thereof reading as follows:

"Now comes the defendant, Edward R. Wilson, in case No. 2441 at law, originally filed in this court by the plaintiff, Clement A. Clement, upon which there has been ingrafted case No. 2539 at law, being in this court from the district court of Oklahoma county, Okl., on the petition of defendant in said cause for removal, and for his answer, cross-petition, and prayer for affirmative relief against Clement A. Clement, alleges and says:

"This answering and cross-petitioning defendant, Edward R. Wilson, wishes the court to know and be informed that it is admitted that there is a diversity of citizenship between the parties litigant, and the amount involved in this controversy exceeds the sum of $3,000, exclusive of interest and costs.

"It is further admitted by this cross-petitioner that on or about the 2d day of June a contract in writing was made and entered into as set forth and recited by the plaintiff, Clement A. Clement, in his petition originally filed in this cause, being case No. 2441 at law, and excerpts of which have been by the pleader copied in and made a part of his petition.

"It is denied, however, that any of the terms and provisions of such contract have been breached by the one making this answer and the cross-petitioner, and denies

generally each and every, all and singular the allegations in said petition contained, except such as may be hereinafter, or have been hereinbefore, admitted.

"Further answering and cross-petitioning, this defendant, Edward R. Wilson, wishes the court to know that there is not due the plaintiff the sum of $4,500, with interest thereon from the 1st day of October, 1922, at the rate of 6 per cent. per annum, or any other sum, by reason of such contract, but on the contrary there is due this answering defendant and cross-petitioner from the plaintiff, Clement A. Clement, the sum hereinafter set out and alleged.

"Further answering, and by way of cross-petition, and to show the court this cross-petitioner is entitled to affirmative relief against the plaintiff, alleges that at the time, to wit, on or about the 2d day of June, 1922, the contract was made and entered into, as attached to plaintiff's petition as an exhibit, and at all times prior thereto, and pending negotiations out of which arose the execution of such agreement, the plaintiff, Clement A. Clement, at Oklahoma City, Okl., and particularly on the 1st and 2d days of June, 1922, orally stated and represented to this cross-petitioning defendant that he had been in the republic of Colombia, South America, for approximately 6 months, and while there had expended and paid out sums aggregating $10,000 for cablegrams, telegrams, telephones, hotel bills, traveling expenses, and other items incident to his efforts to procure from the owners and holders of the oil and gas mining leases and leasehold estates described in the contract, their consent to an extension of option to and including the 1st day of July, 1923, and that he had finally succeeded in obtaining from them their consent to grant extensions of options upon the payment to them of $10,000.

"In keeping with the terms and provisions of such agreement so made in writing, and on or about the 25th day of September, 1922, two drafts in the aggregate of $5,000 were paid by this cross-petitioner and answering defendant, and which amount, as was stated and represented by the plaintiff in this action, before and at the time the contract was entered into, was to be paid to the owners and holders of such oil and gas mining leases and leasehold estates to apply on the sum of $10,000, being the amount the plaintiff in this action represented and states would have to be paid for such extensions and options. * * *

"After the payment of such drafts, and

on or about the 18th day of September, 1922, while this answering and cross-petitioning defendant still relied upon and believed the statements and representations made to him by the plaintiff in this action, at and before the time of the execution of the contract relied upon by the plaintiff as to the consideration to be paid the owners and holders of such oil and gas mining leases and leasehold estates for an option, he paid an additional and further sum of $500 to apply on the $10,000 purchase price set forth in such contract of June 2, 1922, and at the time secured and obtained from the plaintiff in this action a certain written agreement or assignment, in the following words and figures, to wit:

"'Assignment.

"'Know all men by these presents, that Clement A. Clement, of the city of Houston, county of Harris, state of Texas, for and in consideration of the sum of one dollar ($1.00) and other good and valuable considerations in hand paid by Edward R. Wilson, of the city, county and state of Oklahoma, to the said Clement A. Clement, receipt of which is hereby acknowledged, does by these presents assign, transfer, set over, grant, bargain, and convey to the said Edward R. Wilson all of his rights, title, interest, and estate of every kind and character to three certain options for oil and gas purposes conveying certain lands and properties in the republic of Colombia, South America, which said three several properties are evidenced by certain instruments designated respectively as follows, viz.:

"'(1) Escritura No. 1186, dated at Bogota in the republic of Colombia, at the office of the third notary, August 11, 1921;

"'(2) Escritura No. 1227, dated at Bogota in the republic of Colombia, at the office of the third notary, August 23, 1921;

"'(3) A transfer of escritura No. 281, lands of Santa Rita and Opon, dated April 19, 1920, at Chia, before the notary of the Circuit of Chia (Obdulio E. Cuandres), executed by Horacio and Fabio Hernandez and Eduardo Lopez Pumerejo, which option contract is in the form of a letter dated August 27, 1921, to Clement A. Clement, and attached to said letter is a copy of the said escritura No. 281, above referred to:

"'And also further evidenced by certain renewals and extensions thereof extending the options for the period of one year, from their respective expirations, and which said extensions are more particularly described as follows:

" '1. (1) Contract dated at Bogota, republic of Colombia, June 26, 1922, signed by Horacio and Fabio Hernandez; (2) contract dated at Bogota, republic of Colombia, August 4, 1922, signed by Horacio and Fabio Hernandez—both of the above executed in the office of the third notary of the Circuit of Bogota, before Augustin S. Garcia and signed for authentication of signatures by the Minister of the United States of America.

" '2. Escritura No. 1036, dated at Bogota, republic of Colombia, June 22, 1922, at the office of the third notary, Augustin S. Garcia, and signed by Robert Moreno Ch.

" '3. Escritura No. 1037, dated at Bogota, republic of Colombia, June 22, 1922, at the office of the third notary, Augustin S. Garcia, and signed by Rafael Castello Espinosa, Manuel Castello Espinosa, and Luis Felipe Penaredonda.

" 'The said options hereby conveyed being covered by and more fully described in a certain contract between the parties hereto and dated the 2d day of June, 1922, in which the said Clement A. Clement is the first party and the said Edward R. Wilson is the second party, and is referred to herein and made a part hereof by this reference thereto.

" 'The said extensions of said options of contract are now in the Security National Bank of Oklahoma City, and are to be delivered contemporaneous herewith, and are made a part hereof by this reference thereto.

" 'This assignment and the said papers are to be delivered by the said bank to the said Edward R. Wilson only upon payment of the sum of five thousand dollars ($5,000.00) to the said bank for the account of the said Clement A. Clement and upon the further condition that the said Edward R. Wilson by the acceptance of this assignment does hereby bind and obligate himself to pay to the said bank for the account of the said Clement A. Clement the further sum of five thousand dollars ($5,000.00) within ten (10) days from the date of such delivery, the said bank not to be responsible to the said Clement for the said last five thousand dollars ($5,000.00) until the same is paid to them by the said Edward R. Wilson.

" 'This assignment is made upon the further condition that the said Edward R. Wilson is to hold a one-half (½) interest in the properties or the cash received therefrom in accordance with the said contract between the said Clement A. Clement as the first party and the said Edward R. Wilson as the second party, dated the 2d day of June, 1922, as is more particularly provided for in the last paragraph on page two of said contract, which said contract is made a part hereof as aforesaid.

" 'The said Clement A. Clement further binds and obligates himself to make any further, other, or necessary assignments, transfers or conveyances that may be necessary under the laws of the republic of Colombia, South America, to fully vest the title to the option for said oil and gas purposes herein conveyed, or attempted to be conveyed in the said Edward R. Wilson, subject, however, to the provisions aforesaid, and to make same upon demand from the said Wilson.

" 'In witness whereof the said Clement A. Clement has hereto set his hand this 18th day of September, A. D. 1922.

" '[Signed] Clement A. Clement. * * *'

"Shortly after the payment of said sum of $500 on or about the 20th day of December, 1922, this defendant and cross-petitioner for the first time ascertained that the consideration for the extensions and renewals of such options, as defined and reflected by the contract on the 2d day of June, 1922, was not the amount represented on and prior to the date of the execution of such agreement, but was a sum not exceeding .$5,000 and immediately so informed and advised the plaintiff in this action, and that by reason of such false, fraudulent, and deceitful statements and representations he could not and would not proceed with the fulfillment of the contract.

"This answering and cross-petitioning defendant desires the court to further know that at the time such agreement was made and entered into, so as aforesaid, and at all times prior thereto, while the parties to such contract were negotiating, this cross-petitioner relied implicitly upon the statements and representations made by the plaintiff as to the amount of money, to wit, the sum of $10,000, he had expended in his efforts to procure the consent of the owners and holders of such mining leases and leasehold estates to give an extension of option thereon to and including the 1st day of July, 1923, and at the time had no way of knowing or ascertaining that such statements, or any part or portion of them, were false and untrue, and did not learn or ascertain such fact until some time during the latter part of December, 1922, and had such statements and representations not been so made as afore-

said, the contract of the 2d day of June, 1922, would not have been executed and the sum of $5,500 would not have been paid at the times named.

"This answering and cross-petitioning defendant also alleges that such false, fraudulent, deceitful, and wrongful statements and representations were made by the plaintiff in this action for the sole and only purpose of inducing the execution of such agreement and obtain wrongfully the sum of $10,000.

"This cross-petitioner has and does hereby rescind, and has and does hereby tender to the plaintiff in this action, the original, unrecorded assignment of a reassignment of the properties and rights shown by the alleged and purported assignment hereinbefore copied, and has offered, and does hereby offer, to restore to the plaintiff in this cause all he may have passed to this cross-petitioner by reason of the contract of the 2d day of June, 1922, or any other agreement which may have been entered into.

"Wherefore this answering and cross-petitioning defendant respectfully prays that a decree and judgment be made and entered in this court denying the plaintiff the relief sought, or any other relief, and that he (the said cross-petitioner) have a judgment canceling and setting aside the contract of June 2, 1922.

"He further prays that at the hearing of this action he have judgment against the plaintiff, Clement A. Clement, in the sum of $5,500, with interest on the several sums from the dates paid at the rate of 6 per cent. per annum, together with costs and all other relief to which he may show himself entitled."

To that answer and cross-petition, the plaintiff filed the following reply:

"Comes now Clement A. Clement, the plaintiff in the above-entitled cause No. 2441, and the defendant in case No. 2539 removed to this court, and for his reply to the answer and cross-petition says that he admits the execution of the contract referred to in said answer and cross-petition and the payment by defendant to him of the sum of $5,500 under said contract, but denies each and every other allegation in the said answer and cross-petition contained, and, having fully answered, prays judgment as in his original petition in case No. 2441."

A trial was had, and on June 13, 1924, the following decree was rendered:

"Be it remembered that this cause came regularly on for trial on the 10th day of June, 1924, at Guthrie, Okl., and there appeared the plaintiff in person and by his attorneys, Charles H. Shubert and William D. Tatlow, and announced ready for trial, and also appeared the defendant by his attorneys, Shirk, Danner & Fowler, and announced ready for trial.

"It appearing to the court that in law case No. 2441 the contract is admitted and the only issues for determination in the case are in equity as to the cancellation of the contract, but, inasmuch as the case had been assigned on the law docket, and the jury being present, the court at the request of the defendant, Edward R. Wilson, submitted to the jury the equitable issues in the case as advisory only to the court.

"Thereupon there was duly impaneled a jury of twelve good and lawful jurors, who being duly sworn and qualified to try the issues thus submitted to them and a true deliverance make between the plaintiff and defendant according to the law and the evidence; whereupon the jury was excused under proper instructions to return into court on the 11th day of June, 1924.

"Whereupon, the jury having returned to the court and heard the evidence offered by the defendant in opposition to the contract, and the evidence offered by the plaintiff in support of the contract, was again excused and permitted to separate under the instructions of the court until Thursday morning, June 12, 1924, at 9 o'clock a. m., and thereupon, after having heard the arguments of the respective counsel and being duly charged by the court, the jury retired in the custody of the bailiff to consider their verdict, and, after having deliberated thereon, returned into court with their verdict on Friday, the 13th of June, 1924, wherein they found that said contract should be canceled and set aside.

"Whereupon the plaintiff, Clement A. Clement, by his attorney, filed in open court a motion to petition the court to disregard the verdict of the jury and to find the issues in the case in favor of the plaintiff sustaining the validity of said contract, which motion the court then and there overruled, and confirmed and adopted the verdict of the jury. To the action of the court in so doing, the said Clement A. Clement then and there duly and properly objected and excepted thereto, and still so objects and excepts thereto.

"It is therefore ordered, considered, adjudged, and decreed that the contract by and between the said plaintiff, Clement A. Clement, and the defendant Edward R. Wil-

son be and is hereby canceled, annulled, and set aside, and it is further ordered, considered, and adjudged that the plaintiff, Clement A. Clement, is not entitled to recover in his said action on said contract, but the said Edward R. Wilson is hereby permitted to go hence without day.

"It is further ordered, adjudged, and decreed that the said Edward R. Wilson is not entitled to recover the sum of $5,500 or any other sum, on his said cross-petition or cross-bill, but the said Clement A. Clement is permitted to go hence without day on said cross-bill, except the payment of all costs in the suit.

"It is further ordered, adjudged, and decreed that the plaintiff, Edward R. Wilson, have and recover of and from the said Clement A. Clement all costs properly taxed in this case and that execution may be issued therefor."

In his brief, counsel for plaintiff says:

"This case, while begun as an action at law, was converted into an action in equity under the Act of Congress of March 3, 1915 (38 St. at L. 956). This fact is affirmatively shown in the judgment, as well as in the certification of the evidence. Both parties tried the case on this theory, and, under the elementary rules governing appellate procedure, they are bound hereby. Baker v. Kaiser, 126 F. 317, 61 C. C. A. 303 (C. C. A. 8th Cir.). But even if it should have been tried as an action at law, it was well tried as such, with the exception of the result, and, as the question for decision is whether there was any evidence to support the decree or to carry the case to the jury if it was at law, this question is open, and properly here for decision, under the Act of September 6, 1916 (39 St. at L. 727)."

Therefore the only question is whether there was any evidence (a) to support the decree, or (b) to carry the case to the jury if it was at law.

The cross-bill alleged false representations made by plaintiff, which induced defendant to enter into the contract. Plaintiff's reply denied these allegations.

Negotiations between the parties were begun by plaintiff writing to defendant the following letter under date of April 15, 1922:

"Mr. Edward R. Wilson, Oklahoma City, Okl.—Dear Mr. Wilson: Our mutual friend, F. E. Rose, has requested me to send you a report on the lands in Colombia on which I took options to purchase, and I am sending this with accompanying map with the tracts marked.

"I spent nearly a year in Colombia, and took with me a man of rather high rank in that country, through whom I was able to get these contracts, as the valuable lands there are owned by a well-to-do class of people who are not anxious to transact business of any character. These options must be renewed in July for another year, and I have already made the arrangements for this by cable and find the owners will agree to extend upon payment of $10,000 or notification from a bank here that their draft for this amount will be honored if attached to the proper legal extensions of the contract. The total amount of my investment in obtaining these options, traveling, etc., is $10,000 to date or I might say the rock bottom to put this deal in force covering everything is $20,000.

"My proposition on this is that you will arrange for the payment of this $10,000 draft from Colombia for the renewals for one year from July, 1922, and reimburse me the $10,000 I have spent in the trip to Colombia, for which I am to assign you a half interest in the whole deal, including the three options we are particularly dealing on and other contracts I have there which are to come up later. This money will be handled by you, and the renewal money paid on presentation of the draft with the extensions in good shape at a bank in the States which will be some time in July, the other ten thousand covering my investment will be paid to me when the extensions have been found satisfactory and as they should be. We will then own the contracts jointly for the negotiation of such business as you may recommend.

"The amount of my expenses represent the actual money I have paid on the trip and everything incident to same, including all the expenses of carrying Manuel A. Montoya and wife from New York to Colombia and their upkeep all the time I was there.

"As to the renewals, there will be no question about making the extension, as I have arranged this with my lawyer in Bogota, and have his cable and letters that assure me this can be done if the money is forthcoming on their draft.

"Owing to the amount of time required in communication with Colombia, I would like to have you let me know from New York on this, so I can order the paper sent on if your parties will be interested and I can meet you to personally go into all the details that are difficult to include in a letter.

"Yours very truly,      C. A. Clement."

On May 6, 1922, plaintiff sent to defendant the following telegram:

"Received cablegram today from my lawyers and landowners in Colombia stating they will renew options as asked in my former cable March first stop on account of other parties trying to get these lands have had difficult time to get my people to renew for the ten thousand dollars offered them, but this relieves the worry of the situation stop this requires that we assure them of five thousand dollars immediately balance to be paid later stop can we notify them this five thousand dollars will be paid upon delivery of the renewal paper at banks in United States."

On the same day, plaintiff wrote to the defendant the following letter:

"Mr. Edward R. Wilson, Oklahoma City, Oklahoma—Dear Sir: I sent you a wire this morning after receiving a cable from my lawyers and landowners in Colombia; this will advise you of the situation to date and may be of use in your business east. This matter of renewal is vital to the success of our project as the time of the present options is entirely too short to do anything and by sending a man there, to secure extensions, the price would be out of reason, knowing the way those people trade. It is an easier matter to transact this by cable, and I am relieved to learn the terms have been finally agreed by all parties concerned for tracts A B C.

"My offer to them has been standing for several months, but they have written and cabled for an increase in same as several parties from oil companies have been after them to take over these options at their expiration; in order to secure the inside favor in this matter I cabled money to my lawyer on my own account that he could use to rather soften up the feelings of these owners and turn the business to me.

"I do not wish to rush this matter unduly, and my purpose in sending you the wire was not so, but I want you to keep posted on the matter fully and to realize we now have these properties at our disposal and the assurance of another year to July, 1923, if we elect to order the document out covering the renewals. This will cost the $10,000, but we can start the deal by assuring them of the deposit of the money in bank here, if you have made arrangements to take over this proposition and can assure me of the half of the amount ($5,000) I will put up the rest and have the bank here cable their bank in Bogota that the money will

be paid upon delivery of the papers. It will take a month or more for the papers to come as I have to send my lawyer a special power of attorney to act in this for me and it will require two weeks to prepare this as it has to be signed by six different officials before being sent, including the Secretary of State of the United States and the Minister of the Colombia Legation at Washington, at present the document is in the hands of the Secretary of State of Texas for authentication of the signature of the local circuit judge.

"Awaiting your further advice in the matter and with kindest regards,

"Very truly yours,    Clement A. Clement."

In his testimony, plaintiff stated that $6,000 had been paid for the renewal of the options. Defendant testified that he never knew that the renewals were obtained for less than $10,000 until after he had paid the sums of $4,000, $1,000, and $500, and that, when he learned the actual cost of the renewals, he refused to make any other payments to the plaintiff. The court instructed the jury that the burden of proof was on the defendant. The court said further:

"The law properly holds a contract to be a solemn and serious affair, and so the rule arises, gentlemen, that, in order to warrant a cancellation of that contract, the evidence must be clear and convincing and not open to any question or serious doubt. The law puts that burden upon the party attacking the contract. Now what must the evidence prove, gentlemen, to upset the contract; that is, to the extent I have stated? What are the facts that the defendant must establish by clear, cogent showing to your satisfaction? They are as follows:

"First. That the plaintiff, Clement, made the misrepresentations before the contract was executed that the cost of these renewals would be $10,000.

"Second. That such representation was false in fact, or, in other words, that the cost would not be $10,000, but a substantially less sum.

"Third. That such misrepresentation was made by Clement when he knew it was false, and not a mere expression of opinion on the subject.

"Fourth. That the plaintiff, Clement, made the representations with the intention they should be acted upon by the defendant, Wilson, in signing up the contract.

"Finally, that it was a material representation that was one, at least, of the in-

ducing causes for the execution of the contract by the defendant, Wilson."

[1, 2] The jury was fully warranted in finding from the testimony that plaintiff made false representations. The chancellor was warranted in accepting the verdict. Doss v. Tyack, 14 How. 297, 312, 14 L. Ed. 428.

[3] The plaintiff contends that the decree was inconsistent. That may be true. But the inconsistency lies in the fact that the verdict was not followed to its logical conclusion in the rendition of a judgment against plaintiff for defendant for the amount paid by him under the contract. But the plaintiff cannot complain that such judgment was not rendered.

Therefore the decree is affirmed.